Leoxabd J. Supple, J.
The petition in this proceeding alleges that the assessment made against the Glen Island Casino by the Assessor of the City of New Rochelle on the assessment roll of 1962 for 1963 taxes is illegal, and rests its assertion upon two statutory exemptions: first, upon subdivision 1 of section 406 of the Real Property Tax Law, Avhich exempts the realty of a municipal corporation within its corporate limits held for a public use; and second, upon section 213 of the Westchester County Administrative Code, Avhich exempts realty vested in the county or required for the purposes of article 9-B of the code which treats of the Department of Parks, Recreation and Conservation. The court has been brought to the conclusion that neither of these affords the petitioner an exemption here because the court finds that Glen Island Casino is held by the county in its proprietary capacity and not for a public use or purpose or a park purpose.
The court believes the test for determining Avhether the Casino is operated for a public or park purpose or not is: Does the Casino regularly provide food, drink and entertainment to persons who have come to the park to enjoy Avhat it offers and, because they are there and the Casino is there, patronize it, or does it provide food, drink and entertainment to those aaTlo come to the park for food, drink and entertainment and not because they wish to enjoy what the park offers? Do the patrons of the Casino patronize the Casino because they have come to enjoy the park and, when there, desire refreshment, or do they come to the park solely because they Avish to be entertained at the Casino?
The Casino is operated in all seasons but only Saturday nights or when large groups hold functions of one kind or another there by special reservation, and when it is operated, it is operated as a restaurant for profit, open to the general public at least 52 nights a year and in competition with whatever other eating places there are in the City of New Rochelle. If, when operated, it were, as the refreshment stands are, operated only *822 as a convenience and service to those coming to the park not merely to eat and drink but for the general recreation which the open air and seaside parks afford, it might fairly be said that its operation was in a public and park use for a public and park purpose. The evidence indicates, however, that its trade is not chiefly with bathers, fishermen, picnickers or those seeking outdoor recreation at a seaside park, but with persons who come there expressly and only to eat, drink liquor, dance and hold some kind of meeting or function. Many nights, a time when parks are ordinarily used least, the Casino entertains a large group at some function, private or public, sponsored and attended by some social, political, educational, fraternal or business group. Between September 2, 1961 and September 2, 1962 inclusive it was open for this purpose 142 times, presumably chiefly at night, and on some of those occasions for two and once for three different groups.
There is no evidence in the record showing that those coming to the park for general recreation make any substantial use of the Casino. There is nothing to show that in any material way its operation contributes to park purposes or public use of the park as a park. It is literally only a restaurant that is open Saturday nights and whenever some particular group or organization or some person makes special reservation for a private or public function there.
The petitioner, however, also objects that subsequent to June 1, 1962, the taxable status date, and about August 15, 1962 the City Assessor informed the petitioner that the Glen Island Casino had been placed on the 1962 assessment roll as taxable property and was designated as Block 649, Lot 1-A, while before August 15, 1962 and on June 1, 1962 it was included with the rest of Glen Island Park in a single designation as Block 649, Lot 1 Exempt. This change, not only in designation but also in taxable status, was made August 13, 1962 before the final filing date of the completed tax roll, and the petitioner was given ample opportunity to file a formal protest. It does not appear whether it was also given an opportunity to be heard, and the absence of this alone would be sufficient to avoid the assessment.
The respondents rest their assertion of the validity of the City Assessor’s action on section 101 of the New Rochelle City Charter. This section provides that the Assessor may add to the assessment roll any property subject to taxation and the assessment thereof which may have been omitted and, further, that during the period between the completion and opening for inspection of the assessment roll as duly advertised and the signing and relinquishment thereof, the Assessor may revise *823 and correct any assessment clearly shown to be erroneous by reason of clerical error or inadvertent misdescription of property assessed, upon giving personal notice thereof to the owner, agent or occupant of the property. The section also provides that all complaints shall be filed in the office of the Assessor between the 10th and 25th days of June in each year.
The Assessor here did not add to the assessment roll property and an assessment thereon that had been omitted. Actually, on the tentative roll as filed, Glen Island Casino was included in the description of Glen Island Park and was listed on the assessment roll as exempt together with the rest of the park. It was part of Block 649, Lot 1. It should be noted that the section of the City Charter does not provide, as section 550 of the Beal Property Tax Law provides, that for the purposes of the section, taxable real property shall be deemed to have been omitted if included on the roll as exempt property. This provision of section 101, then, cannot validate the addition to the roll made.
The further provision that between the opening of the assessment roll for inspection as advertised and the signing and relinquishment thereof to the City Clerk, the Assessor may revise and correct any assessment clearly shown to be erroneous by reason of clerical error or inadvertent misdescription of property assessed is not applicable. What was done was not a revision or correction of an assessment, and the original entry was not erroneous by reason of clerical error or inadvertent misdescription of property assessed. Further, the section provides for notice to the hapless owner, agent or occupant of the correction but says nothing about a hearing for him. In fact, in its last paragraph the section expressly provides that all complaints must be filed in the office of the Assessor between the 10th and 25th days of June in each year, and certainly no complaint could have been filed between the 10th and 25th days of June, 1962 for an addition to the rolls made August 13, 1962. The section gives the Assessor the power to hold additional hearings up until the roll is filed with the City Clerk on complaints that are filed, but it does not authorize hearing of a complaint on something done subsequent to the time fixed for filing complaints. The court will, then, find and hold that the action of the Assessor in making the addition to the roll was illegal and void.
Accordingly, the prayer of the petition will be granted in part. It will be directed that the assessment against the County of Westchester of Block 649, Lot 1-A at $126,000 on the 1962 assessment roll for taxes for 1963, appearing on line 20 of page 101 of the assessment roll be stricken from the roll, and that the *824 entries in relation to the County of Westchester and Block 649, Lot 1 on the tax map, as they now appear on line 20 of page 87 of the 1962 assessment roll for taxes for 1963 be revised and corrected to restore the entries originally shown thereon on the taxable status date and, further, that the tax map be corrected accordingly; and in all other respects the prayer of the petition will be denied.